UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No._____

TOYOTA JIDOSHA KABUSHIKI
KAISHA, also doing business as TOYOTA
MOTOR CORPORATION, a Japanese
corporation, and TOYOTA MOTOR SALES,
U.S.A., INC., a California corporation,

Plaintiffs,

v.

RAYMOND W. TRAPANI, an individual,
JAKE WITSEN, an individual, and JAKE
WILSON, an individual,

Defendants.

## COMPLAINT

Plaintiffs Toyota Jidosha Kabushiki Kaisha, also doing business as Toyota Motor

Corporation, and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota") for their claims against

Defendants Raymond W. Trapani, Jake Witsen, and Jake Wilson (together, "Defendants"), allege

as follows:

1.    Toyota files this lawsuit for trademark and trade dress infringement, trademark

dilution, false designation of origin, and cyberpiracy under 15 U.S.C. §§ 1114 and 1125, and

common law trademark and trade dress infringement, based on Defendants' use of business names

that consist in unique and primary part of Toyota's world famous LEXUS® trademark, display of

Toyota's world famous  L LOGO® and L LOGO/ LEXUS STYLIZED® design trademarks and

world famous trade dress (i.e., depictions of LEXUS® vehicles) in their advertising, and fraudulent

portrayal of their businesses as "factory authorized agencies."

2.     Toyota also brings claims for breach of contract against Defendant Raymond Trapani, who, after entering into a settlement agreement with Toyota Motor Sales pursuant to which he agreed to permanently cease and desist from infringing uses of Toyota's intellectual property, surreptitiously registered the domain name *lexusloyalty.com* and resumed conducting business under the fraudulent pretense that the new business was authorized by Toyota.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over this action pursuant to:

(a)     The International Convention for the Protection of Industrial Property, 13 U.S. Treaties and Other International Agreements (1962), implemented by Sections 39 and 44 of the Lanham Act, 15 U.S.C. §§ 1121 and 1126, and by the Judicial Code, 28 U.S.C. § 1331;

(b)     Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c)     Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering     for     sale,     distribution,     or     advertising     of     goods     or     services;

(d)     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), relating to the use of false designations of origin or sponsorship tending falsely to describe or designate the source or sponsorship of goods affecting commerce, and relating to false advertising;

(e)     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), relating to dilution;

(f)     Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), relating to domain name cyberpiracy; and

2

(g)     The Judicial Code, 28 U.S.C. § 1367, relating to supplemental jurisdiction over other claims in the action that are so related to claims in the action that they form part of the same case or controversy.

4.     This Court has personal jurisdiction over Defendants because this action arises out of wrongful acts committed by Defendants in this judicial district and because Raymond W. Trapani resides in this judicial district and, on information and belief, Jake Witsen and Jake Wilson also reside in this judicial district.

5.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district and because Raymond W. Trapani resides in this judicial district and, on information and belief, Jake Witsen and Jake Wilson also reside in this judicial district.

## THE PARTIES

6.     Plaintiff Toyota Jidosha Kabushiki Kaisha, also doing business as Toyota Motor Corporation, is a Japanese corporation having its principal offices in Japan.

7.     Plaintiff Toyota Motor Sales, U.S.A., Inc. ("Toyota Motor Sales"), is a California corporation with a principal place of business in Torrance, California.  Toyota Motor Sales is a wholly-owned subsidiary of Plaintiff Toyota Jidosha Kabushiki Kaisha and the exclusive importer and distributor of Toyota automobiles throughout the U.S. (except the State of Hawaii), the Commonwealth of Puerto Rico, and the U.S. Virgin Islands.  Toyota Motor Sales is the exclusive licensee of Toyota trademarks in the distribution territory and contractually obligated to monitor the distribution territory for trademark infringements and abate any infringements found.

8.     Raymond W. Trapani is an individual residing at 4611 N. Federal Highway, Apt. 339, Pompano Beach, Florida 33064.

9.      Jake Witsen is an individual residing at 1300 SW 1st Ave., Apt. 15, Boca Raton, FL 33432-7191.

10.     Jake Wilson is an individual who, on information and belief, resides in or near Pompano Beach, Florida.

**SUBSTANCE OF THE ACTION**

11.     As explained in greater detail below, LEXUS® is a registered trademark that is exclusively registered to Toyota Motor Corporation in the United States.  To misappropriate Toyota's goodwill and reputation and to mislead the public into believing that their businesses are affiliated with Toyota, Defendants have conducted businesses under names including "Lexus of Florida," "Lexus of North America," "Lexus Brokers," and, most recently, "Lexus Loyalty" or "Lexus Loyalty Program," and, to further their deception, registered and used corresponding domain names, including *lexusfl.com, lexusna.com, lexusbrokers.com*, and *lexusloyalty.com*, to host commercial websites promoting the businesses.

12.     Defendants deliberately designed the websites to which *lexusfl.com, lexusna.com,* and *lexusbrokers.com* resolved to appear as if they were being operated by Toyota or an authorized Lexus dealer.  Aside from the different company names and domain names displayed on the websites, the websites were nearly identical.  Each featured numerous images of Lexus automobiles lifted directly from Toyota's own, copyrighted marketing materials and prominently featured Toyota design trademarks.  On each website, Defendants directly and indirectly claimed affiliation with Toyota.  For example, the following statement was displayed as the first line of text on the homepage of each website: "Lexus of North America [Lexus of Florida, Lexus Brokers] is a factory authorized agency to help assist current lessees and new clients into a brand-

new Lexus."   Neither Defendants' identities nor their relationship with Toyota, or, more precisely, lack of relationship, was disclosed.  Indeed, as detailed below, Defendants have gone to great lengths to hide their identities from their customers and Toyota alike.

13.     Most recently, Defendants have begun using the domain name *lexusloyalty.com*, which Defendants display in their advertising and use in their email addresses and have programmed to resolve to Toyota's official *lexus.com* website.

14.     Defendants misappropriate Toyota's trademarks to seize for themselves the benefit of the goodwill and reputation in such trademarks that Toyota has spent many millions of dollars developing.  Defendants have ignored multiple opportunities to resolve this matter simply by adopting business names and domain names that do not include any Toyota trademarks and agreeing to use Toyota's trademarks only truthfully and fairly.  In light of Defendants' continued, blatant, and willful infringement of Toyota's rights, Toyota has no alternative to filing this suit.

15.     Toyota seeks a preliminary and permanent injunction preventing Defendants from continuing to use Toyota's trademarks in their business names and domain names, from displaying Toyota design trademarks and vehicle images (*i.e.*, trade dress) in their advertising, and from falsely claiming to be associated with Toyota.

## FACTS COMMON TO ALL CLAIMS

### *Toyota's Trademarks and Copyrighted Images*

16.     Toyota is a global automotive leader and one of the best-known and well-respected companies on the planet.  Toyota manufactures vehicles and parts in 27 countries and regions around the world and sells them in more than 170 countries and regions.

17.     Toyota began using the LEXUS® mark in the U.S. in 1987 and obtained its first U.S. registration for LEXUS® (Reg. No. 1,574,718) in 1990, for use in connection with

automobiles and related goods and services.  A copy of Toyota's U.S. registration certificate for LEXUS® is attached as *Exhibit A*.  Toyota has acquired many additional registrations for LEXUS® and marks that incorporate LEXUS®.

18.     Toyota has similarly used worldwide and obtained U.S. registrations for design trademarks used in connection with LEXUS®, including the design trademarks shown below and referred to as L LOGO® (design consisting of encircled L) (U.S. Reg. No. 2,575,617) and L LOGO/LEXUS STYLIZED® (L LOGO® combined with LEXUS® displayed in stylized script) (U.S. Registration No. 3,463,476):



Copies of registration certificates for these design trademarks are attached as *Exhibits B and C*, respectively.

19.     The registrations for such marks are valid, unrevoked, subsisting, and, incontestable, and constitute *prima facie* evidence of Toyota's exclusive ownership of these trademarks.  In addition, Toyota claims common law trademarks in the same marks.  Toyota's above-described trademark rights are collectively referred to herein as the "Lexus Marks."

20.     The Lexus Marks include Toyota's trade dress rights in the inherently distinctive Lexus vehicle body shapes of its automobiles, including the Lexus RC and the Lexus LC.  These automobile body shapes are recognized throughout the world and function as trademarks, indicating the source of the automobiles.

21.     Toyota has continuously used the Lexus Marks in connection with the promotion, advertisement, and sale of Lexus automobiles, and related products, parts, and services, nationally

6

and in the state of Florida since well before the acts of Defendants complained of herein.

22.     Toyota has spent many millions of dollars and expended significant effort in advertising, promoting, and developing the Lexus Marks throughout the world.  As a result of such advertising and expenditures, the Lexus Marks have become widely known, famous, and recognized throughout the world as symbols of high quality and innovative goods and services.

23.     The Lexus Marks, and the goodwill associated with the Lexus Marks, are invaluable assets of substantial and inestimable worth to Toyota.

24.     Toyota features high-quality images of Lexus automobiles in its advertising, including on its websites and social media accounts.

25.     Defendants have no affiliation or connection with Toyota whatsoever and have not been authorized by Toyota to use the Lexus Marks.

### *Defendants' Unlawful Conduct*

26.     Defendants appear to be in the automobile rental and leasing business.

27.     To foster the false impression that Defendants' businesses are affiliated with or authorized by Toyota, and to benefit from Toyota's reputation and renown, Defendants have conducted business under names including "Lexus of Florida," "Lexus of North America," "Lexus Brokers," and "Lexus Loyalty" (the "Infringing Business Names") and registered domain names including *lexusfl.com, lexusna.com, lexusbrokers.com*, and *lexusloyalty.com,* which Defendants have used to foster the impression that Defendants are affiliated with Toyota or to impersonate Toyota, including by displaying Toyota's world famous L LOGO® and L LOGO/LEXUS STYLIZED® design trademarks and numerous images of Lexus vehicles copied directly from Toyota's marketing materials, as shown, for example, in the *lexusfl.com* homepage screenshot excerpt saved on March 20, 2017, shown below:



28.      Defendants displayed similar advertisements on a Facebook page[1] that Defendants

operated to promote Lexus of Florida and on similar online, social media pages.  On the Facebook

page, Defendants falsely claimed that "Lexus of Florida is a factory authorized agency to help

assist current lessees and new clients into a brand-new Lexus," and also displayed Toyota design

trademarks and many of the same images of Lexus automobiles that Defendants displayed on

*lexusfl.com, lexusna.com,* and *lexusbrokers.com.*   After Toyota submitted a complaint to

Facebook, Facebook took down Defendants' Facebook account for violating Facebook's

Statement of Rights and Responsibilities.

29.      Moreover, Jake Witsen sent emails to potential customers in which he purported to

have the title, "Lexus Leasing Specialist."

30.      Because Defendants did not initially respond or cooperate when they received

notice of Toyota's legal objections, on April 5, 2017, Toyota initiated a proceeding pursuant to the

Uniform Domain Name Dispute Resolution Policy ("UDRP") to recover the domain names

---

[1] Facebook® is a popular social networking site often used to promote a company's goods and services that operates at *www.facebook.com*.

*lexusfl.com, lexusna.com,* and *lexusbrokers.com.*

31. The registrations for each of these three domain names was held in the name of a proxy service, Domains by Proxy, and Defendants refused to disclose their identities to Toyota's counsel. Upon initiation of the UDRP proceedings, the World Intellectual Property Organization, as a UDRP administrator, provided Toyota with the WhoIs contact information Defendants provided to the domain name registrar at the time of registration for *lexusfl.com*, *lexusna.com*, and *lexusbrokers.com.* In each case, the information was false and invalid.

32. After Toyota's UDRP complaint had been filed, Trapani agreed to stop using the Lexus Marks in business names and domain names and to sign a settlement agreement that Toyota's counsel had previously delivered to him. However, he first insisted that Jake Wilson's name be removed as a signatory, representing, in response to Toyota's questions regarding the role played by Mr. Wilson, that Mr. Wilson was merely a receptionist.

33. On May 5, 2017, Mr. Trapani signed the settlement agreement, but the compliance deadlines had already passed, and, thus, Toyota's counsel asked him to execute a revised version, which he did on June 7, 2017 (the "Settlement Agreement").

34. The Settlement Agreement was effective as of May 10, 2017, and, among other obligations, obligated Trapani to cease use of any Lexus Mark in any business name, to disclose and transfer to Toyota any domain name in his possession or under his control incorporating any Lexus Mark, and to cease from reproducing or displaying Toyota's copyrighted marketing materials and images of Toyota or Lexus automobiles in advertising except for purely informational uses.

35. In addition, Trapani agreed to reimburse Toyota for attorney's fees and costs related to this matter; statutory damages pursuant to 15 U.S.C. § 1117(c); and statutory damages pursuant

to 15 U.S.C. § 1117(d).  Toyota agreed to waive its right to enforce the damages provision provided

that Trapani remained in "full and perfect compliance with the terms of this Agreement."

However, the Settlement Agreement provided that the specified damages are due immediately

upon any breach of the Settlement Agreement.

36.    By email of June 7, 2017, Trapani explicitly confirmed to Toyota's counsel that he

had no domain names including Lexus Marks in his possession or under his control.  A copy of

that email is attached as Exhibit D.

37.    Notwithstanding Trapani's execution of the Settlement Agreement and explicit

confirmation that he had no domain names including Lexus Marks in his possession or under his

control, he had surreptitiously registered *lexusloyalty.com* on May 17, 2017.  Trapani employed

Domains by Proxy to hold the domain name registration in its name, thereby concealing his identity

as the registrant from public view.  As Toyota would later discover, Defendants then began using

the domain name to send emails to consumers urging them to purchase vehicles via "our Lexus

Loyalty Program."

38.    At least one such email, from the email address jake@lexusloyalty.com, purported

to be from "Jake Wilson, Lexus Leasing Manager."  His signature block included the same phone

number that Jake Witsen previously included in his signature block in sending emails to consumers

promoting "Lexus of Florida."[2]

39.    In addition to using *lexusloyalty.com* in connection with email addresses,

Defendants programmed *lexusloyalty.com* to resolve to *lexus.com,* further reinforcing the false

suggestion that Defendants are either an arm of Toyota or acting with Toyota's authorization and

---

[2] Toyota suspects that Jake Wilson and Jake Witsen are the same person and plans to ascertain the
relationship between each of the three defendants as soon as discovery commences and, if necessary,
amend the Complaint to ensure the defendants are accurately identified.

approval.

40. Defendants have no affiliation with Toyota whatsoever and have not been authorized to use the Lexus Marks.

41. Defendants' actions constitute a misappropriation of the Lexus Marks and associated goodwill, and are likely to cause the public at large to believe that Defendants are affiliated with, authorized by, sponsored by, or endorsed by Toyota. In addition, Defendants' wrongful misappropriation of the Lexus Marks dilutes, tarnishes, and whittles away the distinctiveness of the Lexus Marks. Defendants' conduct is intentionally fraudulent, malicious, willful, and wanton. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

42. All conditions precedent to bringing this action have been satisfied or waived.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement under 15 U.S.C. § 1114(1) Against all Defendants)

43. Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

44. The Lexus Marks are distinctive and have acquired secondary meaning. The public associates the Lexus Marks exclusively with Toyota and its products and services. This is a result of the marks' inherent distinctiveness and of distinctiveness acquired through extensive advertising and sales throughout the United States and the world of goods and services bearing the Lexus Marks.

45. By Defendants' unauthorized use of the Lexus Marks, Defendants have, without Toyota's consent, used and are using in commerce reproductions, counterfeits, copies, or colorable imitations of the Lexus Marks. Defendants' actions are likely to cause confusion, to cause mistake, or to deceive in violation of 15 U.S.C. § 1114(1).

11

46.     By committing the acts alleged herein, Defendants have intentionally, knowingly, and willfully infringed the Lexus Marks.

47.     Because of Defendants' infringement, Toyota has been irreparably harmed in its business.   Moreover, Toyota will continue to suffer irreparable harm unless Defendants are restrained from infringing the Lexus Marks.

48.     As a consequence of Defendants' infringement, Toyota has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Trademark Dilution under 15 U.S.C. § 1125(c) Against all Defendants)

49.      Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

50.     The Lexus Marks are famous trademarks.  These marks are inherently distinctive and have acquired distinctiveness.

51.     Toyota has extensively and exclusively used these marks in commerce throughout the United States in connection with Toyota's goods and services.

52.     Defendants' unauthorized use of the Lexus Marks has caused and is likely to continue to cause irreparable injury to and dilution of the distinctive quality of the Lexus Marks in violation of Toyota's rights under 15 U.S.C. § 1125(c).  Defendants' wrongful use of the Lexus Marks dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Lexus Marks.

53.     Defendants have used the Lexus Marks willfully and with the intent to dilute the Lexus Marks, and with the intent to trade on Toyota's reputation and goodwill.

54.     As a direct and proximate result of Defendants' conduct, Toyota has suffered irreparable harm to the valuable Lexus Marks.  Unless Defendants are restrained from further dilution of the Lexus Marks, Toyota will continue to be irreparably harmed.

55.     Toyota has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' actions are allowed to continue.

56.     As a consequence of Defendants' dilution, Toyota has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**(False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a) Against all Defendants)**

57.     Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

58.     By Defendants' unauthorized use of the Lexus Marks, Defendants have used a false designation of origin or sponsorship that is likely to cause confusion, mistake, or deception as to the connection of Defendants with Toyota, have engaged in false advertisement, and have engaged in trade dress infringement in violation of 15 U.S.C. § 1125(a).

59.     Because of Defendants' conduct, Toyota has been irreparably harmed in its business.  Moreover, Toyota will continue to suffer irreparable harm unless Defendants are restrained from such unlawful conduct as set forth above.

60.     As a consequence of Defendants' false designations of origin and sponsorship, false advertising, and trade dress infringement Toyota has suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**(Common Law Trademark Infringement Against all Defendants)**

61.     Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

62.     Toyota has used the Lexus Marks in connection with Toyota's products and services in U.S. commerce and in the State of Florida since long before Defendants' first use.  As

13

a result of the continued sale by Toyota of products and services under the Lexus Marks and as a result of the experience, care, and service of Toyota in producing and providing Toyota's products and services, the Lexus Marks have acquired a worldwide reputation for excellence and have become associated exclusively with Toyota's products and services.

63.     Defendants, with intentional disregard for Toyota's rights, use the Lexus Marks in their advertising, business names, and domain names.  Such acts are likely to cause, and have caused and will continue to cause, confusion as to the source or sponsorship of Defendants' products and services.

64.     Defendants' acts constitute willful infringement of Toyota's exclusive rights in the Lexus Marks, in violation of the common law.

65.     By reason of Defendants' actions, Toyota has suffered irreparable harm.  Unless Defendants are restrained from further infringement of the Lexus Marks, Toyota will continue to suffer irreparable harm.

66.     Toyota has no remedy at law that will adequately compensate for the irreparable harm it will suffer if Defendants' conduct is allowed to continue.

67.     As a consequence of Defendants' actions, Toyota has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Cyberpiracy Against all Defendants)

68.     Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

69.     Defendants registered *lexusfl.com* on June 16, 2015, *lexusna.com* on February 2, 2017, *lexusbrokers.com* on February 16, 2017, and *lexusloyalty.com* on May 17, 2017 (the "Infringing Domain Names").

70.     The Infringing Domain Names wholly incorporate Toyota's famous and registered LEXUS® trademark. *Lexusfl.com* and *lexusna.com* combine LEXUS® with the abbreviations FL and NA, for Florida and North America, respectively. LEXUS® is the unique and primary part of each of the Infringing Domain Names.

71.     The Infringing Domain Names have been used by Defendants to host websites in which Defendants promote and advertise their businesses in a manner that violates Toyota's rights, including by operating under business names that consist in unique and primary part of the Lexus Marks, by displaying counterfeits of Toyota design trademarks, by prominently featuring Toyota's copyrighted auto images, and by failing to disclose their true identities and true relationship with Toyota.

72.     Defendants have attempted to shield their true identities from disclosure to avoid accountability for their actions and increase Toyota's burden and expense in seeking redress. Defendants held the registrations for the Infringing Domain Names through the proxy service Domains by Proxy, concealing Defendants' identities from disclosure. When Toyota subsequently gained access to the underlying contact information Defendants provided, in each case, the information was false and invalid.

73.     Disclosure during the UDRP proceeding showed, with respect to *lexusna.com* and *lexusbrokers.com,* that the domain names were registered to Raymond Trapani, with the address of 1199 S. Federal Highway, Suite 101, Pompano Beach, Florida 33432, which is not a valid mailing address for Raymond Trapani. With respect to *lexusfl.com,* disclosure showed registration in the name of "LLC Perfect Privacy," with the email address of gf2gf9cd9s7@networksolutionsprivateregistration.com, and with the mailing address of 12808 Gran Bay Parkway West, Jacksonville, Florida 32258. This information was invalid on its face.

The registrant name of "LLC Perfect Privacy," which appears to have been selected by Defendants to create the false impression that the registration was held by a proxy service, was a corrupt version of Perfect Privacy LLC, which is located at 303 Peachtree Center Ave., Atlanta, Georgia 30303.  Perfect Privacy LLC is not affiliated with Network Solutions, the proxy service whose identity is reflected in the registrant email address of gf2gf9cd9s7@networksolutionsprivateregistration.com, and neither Perfect Privacy LLC nor Network Solutions are affiliated with Register.com, Inc., the registrar whose mailing address is reflected in the registrant mailing address of 12808 Gran Bay Parkway West, Jacksonville, Florida 32258.

74.     Similarly, when Defendants failed to respond to a demand letter Toyota's counsel sent to Mr. Trapani and Mr. Wilson regarding *lexusloyalty.com,* Domains by Proxy disclosed the beneficial registrant's contact information, which reflected registration in the name of Raymond Trapani, but a mailing address that appears to belong to a Walmart grocery store.

75.     Defendants intended in bad faith to profit from the registration and use of the Lexus Marks in domain names.

76.     Defendants have registered, trafficked in, and used domain names that incorporate a trademark that was famous at the time of registration and are identical to and infringe the Lexus Marks.

77.     Toyota is entitled to an injunction transferring *lexusloyalty.com* to Toyota, together with any other domain name in Defendants' possession or control that uses names, words, designations, or other symbols confusingly similar to any of the Lexus Marks.

78.     In addition, Toyota is entitled to equitable restitution in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract, Against Trapani Only)

79.     Toyota readopts and re-alleges all the allegations contained in paragraphs 1 through 42.

80.     On June 7, 2017, Trapani entered into the Settlement Agreement with Toyota Motor Sales, pursuant to which, among other things, he agreed, effective as of May 10, 2017, to:

a.    Cease use of any Lexus Mark in any business name.  § 1(a).

b.    Disclose and transfer to Toyota any domain name in his possession or under his control incorporating any Lexus Mark and to forbear from registering any such domain name in the future without Toyota's advance, written approval.  § 1(c).

c.    Cease from reproducing or displaying Toyota's copyrighted marketing materials and images of Toyota or Lexus automobiles in advertising except for purely informational uses. § 1(d).

d.    Reimburse Toyota for attorney's fees and costs related to this matter, which presently exceed $30,000; statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $5,000; and statutory damages pursuant to 15 U.S.C. § 1117(d) in the amount of $15,000. § 1(e).  Toyota agreed to waive its right to enforce § 1(e) provided that Trapani remained in "full and perfect compliance with the terms of this Agreement." *Id.*

81.     Pursuant to § 8, Trapani agreed to pay the damages specified in § 1(e) immediately upon any breach of the Settlement Agreement.

82.     Trapani breached the Settlement Agreement by, among other things:

a.    registering *lexusloyalty.com* and failing to disclose his registration of that domain name and transfer it to Toyota,

b.    using the business names of "Lexus Loyalty" and "Lexus Loyalty Program,"

17

c.   displaying Toyota's copyrighted marketing materials in advertising for "Lexus Loyalty" and "Lexus Loyalty Program,"

d.   displaying images of Lexus automobiles in advertisements for "Lexus Loyalty" and "Lexus Loyalty Program," and

e.   failing to pay Toyota the damages specified in § 1(e) immediately upon breaching the Settlement Agreement.

83.   As a direct and proximate result of Trapani's breaches of the Settlement Agreement, Toyota has suffered damages in an amount to be proven at trial.

WHEREFORE, Toyota prays for judgment against Defendants as follows:

A.   That Defendants, and all of their agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of the injunction, be temporarily, preliminarily, and permanently enjoined from, without permission from Toyota:

(1)   using the Infringing Business Names and/or the Lexus Marks, any colorable imitations thereof, or any marks confusingly similar thereto, other than non-prominently, in purely informational statements;

(2)   transferring to anyone other than to Toyota the domain name *lexusloyalty.com* or any other domain name that uses names, words, designations, or other symbols confusingly similar to any of the Lexus Marks;

(3)   registering, maintaining registrations for, using, offering for sale, claiming ownership of, or in any other way using *lexusloyalty.com*, or any other domain name that uses names, words, designations, or other symbols confusingly similar to any of the Lexus Marks;

(4)   otherwise deceptively or unfairly competing with Toyota;

B.      That Defendants be ordered to disclose to the Court and to Toyota all other domain name registrations owned or controlled by Defendants through any domain name registrar or registry in order to permit the Court and Toyota to consider whether any such other registrations should be transferred to Toyota or be subject to other relief in this matter;

C.      That Defendants be ordered to transfer to Toyota their registration for *lexusloyalty.com*, and any other domain name that uses names, words, designations, or other symbols confusingly similar to any of the Lexus Marks;

D.      That Defendants be ordered to deliver to Toyota for destruction all signs, business cards, advertising materials, or products that bear the Lexus Marks or that bear marks confusingly similar to the Lexus Marks, or that result in any unfair competition by Defendants against Toyota; and

E.      That Toyota be awarded such other relief as the Court may deem just and proper.

Dated:  August 25, 2017.

Respectfully submitted,

By: s/Jorge Espinosa
    Jorge Espinosa
    Florida Bar No. 779032
    jespinosa@etlaw.com
    Francesca Russo
    Florida Bar No.  174912
    frusso@etlaw.com
    Robert R. Jimenez
    Florida Bar No.  72020
    rjimenez@etlaw.com
    **ESPINOSA MARTINEZ PL**
    1428 Brickell Ave., Suite 100
    Miami, Florida 33131
    Telephone: 305-854-0900
    Facsimile:  855-854-0900

    *Attorneys for Plaintiffs*